UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CASSIE COLBY,

      Plaintiff,

v.                Case No. 19-cv-883-pp

DANIEL J. SOKUP, *et al.*,

      Defendants.

**ORDER SCREENING SECOND AMENDED COMPLAINT (DKT. NO. 13) UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

  Plaintiff Cassie Colby, who is incarcerated at Taycheedah Correctional Institution and representing herself, filed a complaint under 42 U.S.C. §1983. Dkt. No. 1. Ten days later, she filed an amended complaint. Dkt. No. 5. The court screened the amended complaint and concluded that it failed to state a claim upon which relief could be granted. Dkt. No. 12. The court instructed the plaintiff that if she wanted to proceed with the cases, she had to file a second amended complaint. Id. Specifically, the court told the plaintiff that she needed to provide more information about what happened during her interactions with police officers/jail staff on February 26, 2019. Id. at 6. The court explained that vague allegations such as "the defendants failed to protect me" and "the defendants retaliated against me" were not enough to state a claim upon which the court could grant relief. Id.

  The court received the plaintiff's second amended complaint on August 12, 2020. Dkt. No. 13. This order screens the second amended complaint and dismisses the case.

1

## I. Screening the Second Amended Complaint

### A. <u>Federal Screening Standard</u>

The court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)).

To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than

pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

To state a claim for relief under 42 U.S.C. §1983, the plaintiff must allege that someone deprived her of a right secured by the Constitution or the laws of the United States, and that whoever deprived her of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)).

B.  The Plaintiff's Allegations

Defendants Daniel Sokup and Andrew Straszowski are police officers with the Lake Hallie Police Department; defendant James Kawalochex is the Sheriff of Chippewa County. Dkt. No. 13 at 1-2.

According to the second amended complaint, on February 26, 2019, the plaintiff called 911 because she thought she had been drugged and assaulted. Id. at 2. Sokup and Straszowski responded. Id. The plaintiff says that she "tried to explain what was going on" but that Sokup and Straszowski wouldn't listen because they assumed that she was "under the influence" and was "making things up." Id. at 2. The plaintiff says that several times, she asked Straszowski for a female officer "because [she] felt uncomfortable due to being drugged and possibly assaulted." Id. The plaintiff explains that her "assailants" were in the room, "one walking around the room freely and the other one hiding under the bed in the box spring," but that the officers wouldn't listen to her at all "since [she] was under the influence" and that the officers just assumed she was

3

being paranoid. Id. at 2-3. It appears that Sokup and Straszowski arrested the plaintiff and took her to the jail. Id. at 3.

At the jail, the plaintiff says that "they were laughing and mocking" her and that she was becoming upset. Id. She says that the two arresting officers and the jail staff still wouldn't listen. Id. At one point, she asked to speak to a victim witness coordinator "or something/someone who would help;" she says that "Jailer Maki" handed her a phone. Id. The plaintiff says that she said she wanted to talk in private because she felt uncomfortable talking "in front of all of them," but that "he"—presumably Maki—took the phone and hung it up. Id. The plaintiff asked if there was *anyone* to whom she could speak privately, and that a guard named Lindsey was laughing. Id. She says that she asked Lindsey why she was laughing and why she would think that laughing at someone in the plaintiff's condition "would be okay." Id. The plaintiff asserts that "they" continued to book her and put her in a holding cell; she stayed up for "quite some time still in a haze then finally fell asleep." Id.

The plaintiff says that when she woke up, she tried telling every jailor that she could, but that no one would listen. Id. She says that finally, someone named John Steves let her out of the holding cell, brought her to booking and listened to her "summed up story of what happened." Id. The plaintiff says she begged the Jane Doe jail nurse on duty to keep a sample of her urine to prove that she was drugged; the plaintiff says that the nurse agreed and allowed the plaintiff to urinate in a cup, which the nurse kept. Id. The plaintiff then was returned to the holding cell, where she says that she "began to notice injection

4

marks on [her] body and a carving on [her] vagina." Id. The plaintiff reported her injuries to the "jailers." Id. She also says that once she was in general population, she showed a girl named Michelle Darling. Id. at 3-4.

The plaintiff asserts that between February 28, 2019 and March 2, 2019, she "put in" several inmate complaints in the jail kiosk. Id. at 4. She also spoke to her probation officer, the West Central Drug Task Force and her attorney and told them what had happened to her. Id. She says that no one seemed to care. Id. The plaintiff alleges that on March 2, she made a threatening message on the kiosk; the next day—March 3—an officer from the Lake Hallie Police Department took a "real report," and she was take to the Sacred Heart hospital in Eau Claire. Id. The plaintiff says, however, that by the time she got to the hospital, she couldn't be "tested" because "it had been too long of a wait since the incident." Id. The plaintiff says that "they" thought the "lesions" in her vaginal area could be a disease, but she says that it was "some sort of carving or burn of some kind or something of that sort." Id.

The plaintiff alleges that on March 27, 2019, the sheriff "wiped out" the kiosk and all the messages were lost; she says this was to cover up her attempts to ask for help. Id. She says that she "went in inmate 688 and left inmate 654 due to the kiosk being wiped." Id. The plaintiff says that evidence was missing from her property—specifically her underwear—and that one of her "assailants Colton Melander was allowed down to booking to 'BOMB' his phone to get rid of evidence on there." Id. The plaintiff sums up that "basically" she wasn't being protected as she should have been and that "things were

5

being done to hide that." Id. She says that there is much more but that she can't always think of it all at the same time. Id. She summarizes that the officers did not give her the correct help she needed because of the drugging or assault, and that they did not serve or protect her. Id. She says officers hid and covered up evidence. Id. She says "they" taunted her "w/ assailant in custody putting him in cell next to [her] block." Id. The plaintiff says that she has everything documented, but that she has no money for copies. Id.

She seeks "justice to be served to [her] assailants and an award of money." Id. at 5.

C.  Analysis

The plaintiff states that the defendants—police officers and jail officials—"did not serve or protect" her and instead taunted and mocked her. The court believes that the plaintiff means to allege that she tried to tell the arresting officers that she was drugged, assaulted and possibly tortured, they would not listen to her or take her claims seriously and would not help her get a test that would have supported her claims.

The Constitution requires prison officials to "take reasonable measures to guarantee the safety of inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). This means that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Id. (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.), cert denied, 488 U.S. 823 (1988)). The Fourteenth Amendment applies to a failure-to-protect claim filed by a pretrial detainee. See, *e.g.*, Taylor v. Kenosha Cty. Jail, No. 19-cv-1778-

6

JPS, 2020 WL 3642368, at *2 (E.D. Wis. July 6, 2020) (citing Klebanowski v. Sheahan, 540 F.3d 633, 637 (7th Cir. 2008)). The Eighth Amendment applies to a failure-to-protect claim filed by a convicted prisoner. Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015). The Seventh Circuit has held that there is "little practical difference between the two standards." Brown v. Budz, 398 F.3d 904, 910 (7th Cir. 2005) (quoting Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000)).

To state a claim for failure to protect under the Eighth Amendment, the plaintiff must allege that (1) that she was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to her health or safety. Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010). Similarly, to state a claim for failure to protect under the Fourteenth Amendment, the plaintiff must allege that "that a defendant acted purposefully, knowingly, or recklessly regarding [the] risk of assault, and that their conduct was objectively unreasonable." Taylor, 2020 WL 3642368, at *2 (citing Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015)); see also Dawson v. Dart, No. 17-CV-00283, 2020 WL 1182659, at *2 (N.D. Ill. Mar. 12, 2020) (citing McCann v. Ogle Cty., 909 F.3d 881, 886 (7th Cir. 2018) and Miranda v. Cty. of Lake, 900 F.3d 335, 353 (7th Cir. 2018)).

The plaintiff's allegations do not fit into either framework. The plaintiff alleges that she was assaulted *before* she called 911, before she was taken into custody and before she was detained at the jail. She does not allege that the defendant police officers knew that she was at risk of being assaulted before it

7

happened, or that there was anything the police officers could have done to prevent the assault. Even if she had made that allegation, the Supreme Court held many years ago that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors," and that "the Due Process Clauses [of the Fifth and Fourteenth Amendments] generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago Cty. Dept' of Soc. Servs., 489 U.S. 189, 195-96 (1989).

The plaintiff implies that the officers should have believed her when she said that her assailants drugged and assaulted her and that they should have done something to help her prove it. Again, the Constitution does not require the officers to provide the plaintiff with affirmative aid to prove her case against her assailants. Id.

Nor does the plaintiff allege that she faced a substantial risk of serious harm while she was in the jail. The plaintiff says that while she was in the jail, the officers and jail staff mocked her and made fun of her. Rude and unprofessional conduct does not violate the constitution. DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) (verbal harassment or rude comments alone do not violate the Constitution); Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987) (unprofessional conduct does not violate the Constitution). The plaintiff also says that "they"—she does not say whether it was the police officers or the

8

jail staff—put one of her assailants in a cell next to her block, but she does not allege that she was at risk from that assailant or that the assailant said or did anything to her.

The plaintiff alleges that because the defendants did not believe her claims that she was assaulted and did not get her to a medical professional right away, by the time she got to the hospital, it was too late for a test to show that she had been drugged. She does not allege that she suffered any physical harm as a result of the delay in going to the hospital. She does not allege that she told the officers or the jail staff that she was ill or in pain or suffering. She alleges only that because of the delay in getting to the hospital, she was not able to prove that her assailants drugged her. This is unfortunate, but it is not a violation of the Constitution.

The plaintiff states that the defendants—particularly the Sheriff—hid and/or covered up evidence; she says that the Sheriff wiped all her complaints from the kiosk. If the Sheriff had hidden or covered up evidence in a *criminal* case—evidence that would have shown that the plaintiff was not guilty—that might have violated the federal Constitution. The Constitution, however, does not require law enforcement or jail staff to preserve evidence on behalf of someone who alleges that they were a victim of a crime.

In the original and the first amended complaints, the plaintiff alleged that the defendants were "retaliating" against her for filing complaints. Dkt. No. 1 at 3, Dkt. No. 5 at 3. The plaintiff made no mention of retaliation in the second amended complaint. An amended complaint "supersedes" earlier

9

complaints and renders them void. Flannery v. Recording Indus. Ass'n of Am., 354 F.3d 632, 638 n.1 (7th Cir. 2004). Even if the original and first amended complaints were not void, however, neither stated a claim for retaliation.

A plaintiff asserting a First Amendment retaliation claim must show that (1) she engaged in activity protected by the First Amendment, (2) she suffered a deprivation that likely would deter her from engaging in First Amendment activity in the future, and (3) the First Amendment activity "was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (quoting Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir. 2008)). The plaintiff says that she made complaints—that is activity protected by the First Amendment. But she does not explain what deprivation she suffered—how did the defendants retaliate against her? And why does she believe that her complaints were what caused the defendants to do whatever they did? Simply alleging that the defendants retaliated against her for making complaints is not enough to state a claim.

Wisconsin has a crime victims' rights statute, Wis. Stat. §950.01, *et seq*. The statute provides crime victims with many rights, including the right to be treated with fairness, dignity and respect (Wis. Stat §950.04(1v)(ag)); to request an order for, and be given the results of, communicable disease testing (Wis. Stat §950.04(1v)(d)); and to be informed about how to file a complaint (Wis. Stat. §950.04(1v)(do)). The plaintiff seems to be alleging that, rather than violating her civil rights under the federal Constitution, the defendants violated her rights as a crime victim. The proper forum for the plaintiff to bring those

10

allegations is state court, not federal court. See Wis. Stat. §950.105 ("[a] crime victim has a right to assert, in a court in the county in which the alleged violation occurred, his or her rights as a crime victim under the statutes or under article I, section 9m, of the Wisconsin Constitution").

The second amended complaint does not state a claim for which this federal court can grant relief (nor did the original or first amended complaints). The court will dismiss this case for failure to state a claim.

### III. Conclusion

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of

11

the entry of judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 31st day of August, 2020.

                              **BY THE COURT:**

                              _____
                              **HON. PAMELA PEPPER**
                              **Chief United States District Judge**